UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW HAMPSHIRE


United States of America

     v.                              Civil No. 15-cr-215-01/02-JL
                                     Opinion No. 2017 DNH 149P
Yovannys Guerrero Tejeda and
Eric Pineda Mateo


                         **MEMORANDUM ORDER**

    This case involves whether a variation of marital privilege, the adverse spousal testimonial privilege, protects one spouse from testifying against the other when both spouses jointly participated in criminal activity.  Eric Pineda Mateo ("Pineda") and his wife, Yovannys Guerrero Tejeda ("Guerrero"), were arrested and indicted on a number of drug-related offenses. Ms. Guerrero pleaded guilty to two counts of distribution of heroin, one count of possession with intent to distribute fentanyl, and one count of conspiracy to possess with intent to distribute and to distribute heroin and fentanyl.  Mr. Pineda was charged only with the conspiracy count.

    The prosecution, seeking to introduce Guerrero's immunized testimony during Pineda's trial, issued a subpoena to Guerrero and moved in limine seeking a determination, pursuant to Federal

[Rule of Evidence 104(a)](), that her testimony is admissible.[1]
Guerrero moved to quash the subpoena, invoking the adverse spousal testimonial privilege.[2] The prosecution argues that an exception to that privilege recognized by, inter alia, the Seventh Circuit Court of Appeals, vitiates the privilege where both spouses participated in the charged criminal activity, rendering her testimony admissible. Concluding that the substantial weight of authority impresses against recognizing such an exception, the court grants Guerrero's motion to quash the subpoena and denies the prosecution's motion under [Rule 104(a)]().

## I.   Background[3]

Guerrero's involvement in this case began when she answered a phone call from a confidential informant seeking to purchase three "fingers" of heroin. On October 6, 2015, she met the confidential informant in the parking lot of a mall in

---

[1] Rule 104 Motion (doc. no. [57]).

[2] Mot. to Quash (doc. no. [71]). Though, as discussed below, only Guerrero may assert (or waive) this privilege, Pineda also objects to the introduction of her testimony. See Obj. to Rule 104 Motion (doc. no. [67]).

[3] The court draws this background information from the anticipated testimony described by the prosecution in its pretrial memorandum. See Pretrial Mem. (doc. no. [65]) at 1-5.

2

Newington, New Hampshire, where she exchanged a bag of heroin for $1,000 in cash. The informant contacted Guerrero again on October 21, asking to purchase an additional five "fingers" of heroin. Guerrero, this time accompanied by Pineda, met with the informant to exchange 25 grams of heroin for another $1,000.

After additional conversations over the next several weeks, the informant and Guerrero arranged a third transaction for November 16, 2015. Guerrero and Pineda arrived at the pre-determined location and were arrested by the New Hampshire State Police, who searched their car and recovered 25 grams of fentanyl.

Guerrero and Pineda were jointly indicted under 21 U.S.C. §§ 841(a)(1) and 846 for conspiracy to distribute heroin and fentanyl and to possess those substances with the intent to distribute them.[4] Guerrero alone was indicted on two counts of distribution of heroin under 21 U.S.C. § 841(a)(1) and one count of possession with intent to distribute fentanyl under 21 U.S.C. § 841(a)(1). Guerrero pleaded guilty to all four counts.

The prosecution indicated its intention to call Guerrero as a witness at Pineda's trial, which was scheduled to begin on May 8, 2017. To that end, after she asserted her Fifth

---

[4] See Superseding Indictment (doc. no. 48).

3

Amendment right against self-incrimination, the government sought an order securing her immunity, shielding her against prosecution based on her testimony.[5] After jury selection but before trial could begin, Guerrero invoked her adverse spousal testimonial privilege and moved to quash the prosecution's subpoena. When the prosecution then stated its intention to take an interlocutory appeal on an adverse ruling on these motions, necessitating a delay of the trial, the court dismissed the panel.[6]

II. **Analysis**

"The court must decide any preliminary question about whether a . . . privilege exists. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). "[T]he party asserting a privilege bears the burden of showing that the privilege applies. If the privilege is established, the burden shifts to the opposing party to show

---

[5] See Mot. to Compel Testimony (doc. no. 64); see also 18 U.S.C. §§ 6001-6003.

[6] It was unfortunate, not to mention unnecessary, that the court was forced to release an already-chosen jury, wasting the time of both potential and selected jurors. The prosecution's intent to appeal an adverse ruling could have been communicated before (and thus eliminating the need for) jury selection. The court ascribes no bad faith or improper motive to the prosecution, but wishes it had proceeded differently.

4

that an exception defeats the privilege." United States v. Breton, 740 F.3d 1, 9-10 (1st Cir. 2014). "The common law -- as interpreted by United States courts in the light of reason and experience -- governs a claim of privilege" unless the Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 501.

Guerrero has carried her burden of showing that the adverse spousal testimonial privilege applies to her testimony.[7] The prosecution has not carried its burden of demonstrating that a joint-participant exception defeats that privilege. Accordingly, and for the reasons explained more fully below, the court grants Guerrero's motion to quash the subpoena and denies the prosecution's motion to admit her testimony.

### A. Spousal privileges

"The common law recognizes two related but distinct marital privileges . . . ." Breton, 740 F.3d at 9. The marital communications privilege "permits a defendant to refuse to testify, and allows a defendant to bar his spouse or former spouse from testifying, as to any confidential communications made during their marriage." Id. at 10. This privilege

---

[7] The prosecution does not challenge the fact that Guerrero and Pineda are married, nor does it dispute Guerrero's right, as Pineda's spouse, to assert the privilege.

5

protects only those confidential statements made during the course of a marriage. United States v. Bey, 188 F.3d 1, 4 (1st Cir. 1999). It is subject to a joint-participant exception, meaning that "[c]ommunications concerning crimes in which the spouses are jointly participating . . . do not fall within the protection of [the] privilege." United States v. Picciandra, 788 F.2d 39, 43 (1st Cir. 1986).

The adverse spousal testimonial privilege "allows one spouse to refuse to testify adversely against the other in criminal or related proceedings . . . ." Breton, 740 F.3d at 9-10. Though it "sprang from two canons of medieval jurisprudence" which are "now long-abandoned," its "modern justification . . . is its perceived role in fostering the harmony and sanctity of the marriage relationship." Trammel v. United States, 445 U.S. 40, 44 (1980) ("Trammel II"). Because the privilege is "designed to protect the marriage relationship as it exists at the time of trial," it "applies to all testimony of any kind." United States v. Ammar, 714 F.2d 238, 258 (3d Cir. 1983).

In its traditional form, both the defendant and the testifying spouse could assert the privilege to prevent the latter's testimony. Hawkins v. United States, 358 U.S. 74, 78 (1958). This allowed a defendant to prevent his or her spouse

from testifying even if the latter were willing to do so, thus preventing the presentation of relevant evidence. Trammel II, 445 U.S. at 51-52. Following the Supreme Court's decision in Trammel II, however, "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." Id. at 53.

The admissibility of Guerrero's testimony turns on whether a joint-participant exception applies to the adverse spousal testimonial privilege.[8] The prosecution takes the position that it does and that Guerrero's testimony falls into that exception. Guerrero and Pineda argue the contrary. The First Circuit Court of Appeals has not addressed the question directly. Cf. Picciandra, 788 F.2d at 43 (recognizing exception to marital communications privilege while distinguishing that privilege from the adverse spousal testimonial privilege). Several other Courts of Appeals, having done so, reach conflicting conclusions.

---

[8] Pineda initially invoked both marital privileges. The parties agree, however, that any communications that the prosecution may seek to introduce and that, arguably, would be protected by the communications privilege included third parties, such as the confidential informant. Those communications therefore were not privileged because they were not confidential.

7

The court concludes that the weight of authority counsels against recognizing such an exception. Accordingly, Guerrero's testimony is not subject to such an exception and remains protected by the adverse spousal testimonial privilege.

**B. The joint-participation exception**

Concerned about the breadth of the adverse spousal testimonial privilege in its traditional form, the Seventh Circuit Court of Appeals narrowed the adverse spousal testimonial privilege by recognizing a joint-participant exception. United States v. Van Drunen, 501 F.2d 1393 (7th Cir. 1974); see also United States v. Keck, 773 F.2d 759, 767 (7th Cir. 1985); United States v. Clark, 712 F.2d 299, 300 (7th Cir. 1983). The court acknowledged that the privilege's purpose was "to preserve the family" by "preventing either spouse from committing the 'unforgivable act' of testifying against the other in a criminal case." Van Drunen, 501 F.2d at 1396 (quoting Hawkins, 358 U.S. at 78). This interest, however, did not "justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or coconspirator he is creating another potential witness." Id. The court accordingly created an exception to the adverse spousal testimonial privilege such that neither spouse could assert it, either to avoid testifying or to

8

prevent the other from testifying, when the spouses both participated together in the charged criminal activity. Id. at 1397.

The Tenth Circuit Court of Appeals, addressing the same concern, followed the Seventh Circuit's lead and likewise recognized a joint-participant exception. United States v. Trammel, 583 F.2d 1166, 1169 (10th Cir. 1978) ("Trammel I") (citing Van Drunen, 501 F.2d at 1393). Faced with a case in which the defendant asserted the privilege to prevent his co-conspirator wife from voluntarily testifying, the court held that "a defendant husband who has jointly participated in a criminal conspiracy with his wife cannot prevail upon his claim of the marital privilege when his wife gives incriminating testimony under grant of immunity." Id.

On appeal, the Supreme Court echoed that concern, but did not follow suit with a full-blown endorsement of the joint-participant exception. It noted that the privilege, in its traditional form, contravened "the fundamental principle that 'the public . . . has a right to every man's evidence,'" Trammel II, 445 U.S. at 49 (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)), because it permitted a defendant to prevent his or her spouse from testifying regardless of the latter's wishes. To address that concern, rather than recognize a joint-

participant exception, the Supreme Court narrowed the privilege by vesting the right to assert it in the testifying spouse alone. In doing so, it observed that "[w]hen one spouse is willing to testify against the other in a criminal proceeding . . . a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace." Id. at 52.

The Seventh Circuit Court of Appeals alone preserved the exception in the wake of Trammel II. It did so by interpreting that decision as promoting a "general policy of narrowly construing [a] privilege" that "generally retards truth seeking," a policy with which, it concluded, the joint-participant exception was consistent. Id. Trammel II did not "implicitly reject[] the joint participants exception," the Seventh Circuit explained, because Trammel II addressed only "the limited question of whether the accused spouse could invoke" the adverse spousal testimonial privilege without considering the existence of a joint-participant exception. Clark, 712 F.2d at 301 n.1.

### C. Rejection of the exception

No other Court of Appeals has adopted the joint-participant exception to the adverse spousal testimonial privilege. The Second, Third, and Ninth Circuit Courts of Appeals have, to the

10

contrary, rejected the Seventh Circuit's reasoning and explicitly declined to recognize a joint-participant exception to that privilege.[9]  United States v. Ramos-Oseguera, 120 F.3d 1028, 1042 (9th Cir. 1997), overruled on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000); In re Grand Jury, 755 F.2d 1022, 1026 (2d Cir. 1985), vacated on other grounds sub nom. United States v. Koecher, 475 U.S. 133 (1986); Appeal of Malfitano, 633 F.2d 276, 279 (3d Cir. 1979).

In declining to find such an exception, the Second Circuit Court of Appeals relied on the Supreme Court's approach to narrowing the privilege in Trammel II.  As Judge Friendly observed:

> If the Supreme Court looked on the exception with favor, it is somewhat peculiar that it should not have decided the case on that ground rather than making the much broader assault upon the privilege involved in confining the privilege to the witness-spouse, thereby requiring a partial overruling of a decision little more than twenty years old.  Also one would have

---

[9] The prosecution distinguishes the decisions of the Second and Ninth Circuit Courts of Appeals on grounds that those decisions were later vacated or overruled.  See United States v. Koecher, 475 U.S. at 133 (vacating and remanding the Second Circuit's decision in In re Grand Jury, 755 F.2d 1022, 1026 (2d Cir. 1985), "with instructions to dismiss the cause as moot"); United States v. Nordby, 225 F.3d 1053, 1055 (9th Cir. 2000) (overruling United States v. Ramos-Oseguera, 120 F.3d 1028, 1042 (9th Cir. 1997), on other, unrelated grounds).  Because neither of these subsequent decisions even tangentially addresses the privilege determinations of In Re Grand Jury and Ramos-Oseguera, the earlier cases retain at least their persuasive value on the question of the joint-participation exception.

>     expected the Court at least to have indicated that the
>     exception might still make the privilege unavailable
>     even when the witness-spouse asserted it.

In re Grand Jury, 755 F.2d at 1026. The Supreme Court's narrowing of the privilege undermined the rationale of Van Drunen and the Tenth Circuit Court of Appeals's Trammel I decision because "[a] person desiring to enlist the aid of his spouse as an accomplice cannot," post-Trammel II, "be sure that he is not creating another potential witness; he takes the risk that the spouse may choose to testify." Id.

The Third Circuit Court of Appeals based its rejection of the exception in the privilege's own underlying rationale -- protection of marriages. It reasoned that "recognition of an exception where it can be said that both spouses are involved [in criminal conduct] will tend to undermine the marriage precisely in the manner that the privilege is designed to prevent." Malfitano, 633 F.2d at 279. That is to say, a joint-participation exception would require acknowledgement either that "marriages with criminal overtones" are more likely to be unstable, and thus require less protection, or that such marriages should not be protected. Id. at 278. The court declined to involve itself in "assess[ing] the social worthiness of particular marriages," including those between individuals jointly participating in criminal conduct, "or the need of

particular marriages for the protection of the privilege," as recognizing such an exception would require. Id. at 279. In any event, it concluded, "the fact that under Trammel the witness spouse is the holder of the privilege completely satisfies any concern that the privilege not be extended to marriages that in fact need no protection." Id. at 278.

Finally, the Ninth Circuit firmly rejected a joint-participant exception. Ramos-Oseguera, 120 F.3d at 1042. It read the Supreme Court's statement in Trammel II that an unwilling spouse "may be neither compelled to testify nor foreclosed from testifying" to mean that "there is no joint participant exception to the testimonial privilege" insofar as recognizing an exception would permit the court to compel such an unwilling spouse to testify. Id.

**D. Guerrero's testimony and the joint-participant exception**

Neither the First Circuit Court of Appeals nor the Supreme Court have recognized a joint-participant exception to the adverse spousal testimonial privilege.[10] In the absence of such

---

[10] The First Circuit Court of Appeals has recognized a joint-participant exception to the marital communications privilege. Picciandra, 788 F.2d at 43. But a recognized exception to that privilege does not necessarily implicate an exception to the adverse spousal testimonial privilege. The two privileges serve different purposes. The marital communications privilege "exists to promote marital harmony and stability by 'ensur[ing]

13

binding precedent, the prosecution would have this court follow the Seventh Circuit Court of Appeals in recognizing the exception.[11]  Guerrero, taking the contrary position, contends that the decisions of the Second, Third, and Ninth Circuit Courts of Appeals rejecting such an exception are more persuasive.[12]  The court agrees with Guerrero.

Faced with an opportunity to recognize the exception as the Tenth Circuit Court of Appeals had in the decision below, the Supreme Court in Trammel II instead "ma[de] the much broader assault upon the privilege involved in confining the privilege to the witness-spouse," and in doing so partially overruled its own precedent, Hawkins v. United States, 358 U.S. 74 (1958).  In re Grand Jury, 755 F.2d at 1026.  While the Court in Trammel II did not explicitly reject the exception, this court is persuaded by the conclusion of the Second Circuit Court of Appeals that it

---

that spouses . . . feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law.'"  Breton, 740 F.3d at 10 (quoting United States v. Brock, 724 F.3d 817, 820-21 (7th Cir. 2013)).  The adverse spousal testimonial privilege "is more broadly aimed at protecting marital harmony," and "compelling a spouse to testify under a joint participants exception could create exactly the negative impact on the marriage that the privilege was designed to avoid."  In re Grand Jury, 755 F.2d at 1027-28.

[11] See Rule 104 Motion (doc. no. 57) at 8.

[12] See Mot. to Quash (doc. no. 71) at 4-8.

14

did so implicitly by declining to adopt the Tenth Circuit's approach. See id. "[I]n light of [the adverse spousal testimonial privilege's] existence since the early days of the common law and of the importance of the interests which the marital privilege serves," this court would, as Judge Friendly suggested, "leave the creation of exceptions to the Supreme Court or to Congress," id. at 1028, or at least to the First Circuit Court of Appeals.

Our Court of Appeals has not directly addressed the question of whether such an exception exists. It has, however, afforded more protection to the adverse spousal testimonial privilege in other contexts. For example, in this Circuit, a witness spouse may invoke that privilege in criminal forfeiture proceedings. United States v. Yerardi, 192 F.3d 14, 22 (1st Cir. 1999). Other courts have declined to extend the privilege to such proceedings on the grounds that the possibility of future prosecution too speculative to justify its invocation. See United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y., 71 F.3d 1067, 1071 (2d Cir. 1995). Declining to recognize a joint-participant exception is consistent with this slightly more generous approach to the privilege.

That the exception is not clearly established among other Courts of Appeals further supports this court's reluctance to

adopt it.  As discussed supra, Parts II.B and II.C, more Courts of Appeals have declined to recognize a joint-participant exception than have recognized it.  See In re Grand Jury, 755 F.2d at 1026; Malfitano, 633 F.2d at 279; Ramos-Oseguera, 120 F.3d at 1042.  The prosecution's contention that "other courts have recognized that when husband and wife are co-conspirators, acts made in furtherance of [a criminal] conspiracy are outside the testimonial privilege,"[13] the Seventh Circuit aside, is unsupported.  It cites nine cases for this proposition.  Of those nine cases, only two decisions from the Seventh Circuit Court of Appeals[14] and the Tenth Circuit Court of Appeals's decision in Trammel I support that contention.  The remaining cases concern either witness-spouses voluntarily testifying against the defendant spouse,[15] which is not the case here where Guerrero asserted the privilege, or the joint-participation exception to the marital communications privilege,[16] which is not

---

[13] Rule 104 Motion (doc no. 57) at 6.

[14] Keck, 773 F.2d at 767; Clark, 712 F.2d at 300-01.

[15] United States v. Parker, 834 F.2d 408, 411 n.4 (4th Cir. 1987); United States v. Estes, 793 F.2d 465, 467 (2d Cir. 1986).  This was also the case in Trammel I, 583 F.2d at 1168.

[16] United States v. Sims, 755 F.2d 1239, 1243 (6th Cir. 1985); United States v. Neal, 743 F.2d 1441 (10th Cir. 1984); United States v. Ammar, 714 F.2d at 258; United States v. Mendoza, 574 F.2d 1373, 1381 (5th Cir. 1978).

at issue here.  Nor does recognition of a joint-participant exception to the marital communications privilege, in and of itself, create a similar exception to the adverse spousal testimonial privilege.  Cf. In Re Grand Jury, 755 F.2d at 1027 (distinguishing the rationales underlying the marital communications privilege and the adverse spousal testimonial privilege, acknowledging joint-participant exception to the former, and declining to recognize it for the latter); Malfitano, 633 F.2d at 279 n.5 (rejecting an analogy between the marital communications privileges and the adverse spousal testimonial privilege, because the latter does not protect the disclosure of communications "but rather the impact of the testimony on the marriage").

Finally, the circumstances under which the Seventh Circuit Court of Appeals adopted the exception weigh strongly against following that court's approach.  As discussed supra Part II.B, the Seventh and Tenth Circuit Courts of Appeals adopted the exception so as to curtail the scope of the privilege at a time when a defendant spouse could assert it to prevent his or her co-conspirator spouse from voluntarily testifying, and thus preempt the presentation of otherwise admissible and relevant evidence.  Van Drunen, 501 F.2d at 1396-97; Trammel I, 583 F.2d at 1168.  Addressing the same problem, and presented with the

17

Tenth Circuit's rationale, see Trammel I, 583 F.2d at 1169, the Supreme Court instead narrowed the privilege by investing its assertion in the testifying spouse alone. Trammel II, 445 U.S. at 53. This leaves the privilege intact to perform the function the Supreme Court has ascribed to it, see id. at 52, and places the decision of whether the marriage may weather one spouse testifying against the other in the hands of the testifying spouse, not the court. See In re Grand Jury, 755 F.2d at 1026.

### III. Conclusion

The weight of authority counsels against finding that a joint-participant exception to the adverse spousal testimonial privilege allows the court to compel Guerrero to testify involuntarily against her husband, Pineda. Accordingly, Guerrero's motion to quash her subpoena[17] is GRANTED and the prosecution's motion seeking to establish her testimony's admissibility is DENIED.[18]

**SO ORDERED.**

_Joseph N. Laplante_
Joseph N. Laplante
United States District Judge

Dated: August 8, 2017

---

[17] Document no. 71.

[18] Document no. 57.

cc: Kevin E. Sharkey, Esq.
　　Eduardo Masferrer, Esq.
　　Susan B. Church, Esq.
　　Donald A. Feith, AUSA
　　Shane Kelbley, AUSA